**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION**

| | | |
|---|---|---|
| IN RE: PRE-FILLED PROPANE TANK MARKETING & SALES PRACTICES LITIGATION | ) ) ) ) | MDL NO. 2086<br><br>Master Case No. 09-2086-MD-W-GAF |
| ALL ACTIONS | ) | |

## ORDER ESTABLISHING DOCUMENT PRODUCTION PROTOCOL

1. <u>Definitions and Scope</u>. The following protocol shall control the production of discoverable documents and electronically stored information (collectively "Documents") when production commences.

   (a) As used in this protocol, the term Document(s) shall have the same meaning as used in the Federal Rules of Civil Procedure and case law construing same. Unless otherwise set forth herein, issues concerning the production of Documents shall be resolved with reference to the Federal Rules of Civil Procedure and case law construing same.

   (b) The phrase "Producing Party" shall mean the party producing Documents in response to any request for production of Documents pursuant to Fed. R. Civ. P. 34(a) or pursuant to initial production of Documents identified in the party's Rule 26(a) disclosures.

   (c) The phrase "Receiving Party" shall mean the party receiving production of Documents in response to any request for production of Documents pursuant to Fed. R. Civ. P. 34(a) or pursuant to initial production of Documents identified in the party's Rule 26(a) disclosures.

2. <u>Commencement of Production</u>. Production of Documents shall proceed at such time, place, and in such sequence as may be agreed to by the Producing Party and the Receiving Party. In the event agreement cannot be reached, the Producing Party and the Receiving Party shall

submit their respective positions to the Court, and the Court will issue further orders concerning the productions, as necessary.

3. <u>General Format of Production</u>. Subject to the provisions of paragraph 4, Documents that are produced in these proceedings, whether originally stored in paper or electronic form, shall be produced in electronic image form in the manner as described below. Notwithstanding the foregoing provisions of this paragraph, the Parties reserve the right to request that an alternative format or method of production be used for certain Documents, if such Document is not susceptible to production in the format or methods of production addressed herein. In that event, the Receiving Party and the Producing Party will meet and confer to discuss alternative production requirements, concerns, formats, or methods.

4. <u>Production Format</u>. Documents shall be produced according to the following <u>formats</u>:

(a) <u>Paper Documents</u>. Documents that are maintained in paper format shall be scanned as black and white images at 300 d.p.i. or greater resolution, in a Group 4 compression single-page Tagged Image File Format ("TIFFs" or ".tiff format") and reflect the full and complete information contained in the original Document. Documents shall also be produced with the associated Optical Character Recognition ("OCR"), provided, however, that no Producing Party shall be required to ensure that the OCR is an exact duplicate of the contents of the TIFF image; and the Receiving Party shall accept the OCR in its "as is" condition.

(b) <u>Electronically Stored Information</u>. Except as provided in Paragraph 4(e) below, Document images shall be generated from electronic Documents in a Group 4 compression single-page "TIFF" image that reflects the full and complete information contained on the original

Document, together with a load file or functional equivalent specified in Paragraph 4(c) that contains the metadata as set forth in Paragraph 11 and extracted text. In the event a Document is redacted, the Producing Party shall withhold the redacted text for that Document. The failure to withhold such text for a redacted Document by a Producing Party shall not be deemed a waiver of the privilege associated with that Document.

(c) <u>Load File Structure</u>. The Producing Party shall produce a unitization file ("load file") for all produced Documents in accordance with the following formatting, including a separate load file for native Documents:

**OCR Text**:

- Single file per Document containing all the Document's pages
- Pages separated by form feed character (decimal 12, hex 0xC)
- Filenames should be of the form:
  <Bates num>.txt
  Where <Bates num> is the BATES number of the first page in the Document
- Text must be encoded in UTF-8

**Images**:

- Single page per image
- Single image per file
- TIFF is default FORMAT unless the following formats are agreed to: jpeg, jpeg2000, giff, png, single image tiff, and bmp
- Filenames should be of the form:
  <Bates num>.<ext>
  Where <Bates num> is the BATES number of the page, and <ext> is the appropriate extension for the image format (.jpg, .tif, .png, etc)

**Index Files**:

- .CSV files
- First line must contain the column/field names
- Every row must have the same number of columns/fields (empty values are acceptable)
- Text must be encoded in UTF-8

**Native Index Files**:

- .CSV files
- All lines contain data – first row must NOT contain column headers
- Every row must have 2 columns/fields (empty values are NOT acceptable)
    - First column/field must contain the BATES number for the Document
    - Second column/field must contain the filename (NOT the full path) of the native file. Filenames must be unique in the production – unless the content is identical (for example, a native and an OCR text file may both be named XYZ01234567.TXT if they are identical).
- Text must be encoded in UTF-8
- Values must be enclosed by double quotes (ascii character 34)

(d) <u>Resolution of Production Issues</u>. Documents that cannot be read because of imaging or formatting problems shall be promptly identified by the Receiving Party. The Producing Party and the Receiving Party shall meet and confer to attempt to resolve the problems, to the extent the problems are within the parties' control.

(e) <u>Native Format Documents</u>. "Native Format Documents" (or "Native Format") are defined as electronic Documents that have an associated file structure defined by the creating application. Notwithstanding the foregoing provisions of this paragraph, the parties

recognize that it may be appropriate for certain Documents to be produced in Native Format. Therefore, the Producing Party shall produce all spreadsheets in native format unless there is an agreement to the contrary. The Receiving Party may also request that the Producing Party produce additional file types of electronic Documents in Native Format where the converted image format distorts or causes the information to be improperly displayed. Such Documents shall be listed by the Receiving Party or a general agreement may be reached after meeting and conferring. Prior to producing any Protected Information as defined in the Protective Order entered herein in Native Format, the Producing Party and the Receiving Party shall meet and confer to establish additional procedures, to the extent necessary, for the protection of the native information.

(f) <u>Color</u>. Documents shall be produced in black and white in the first instance. If a produced Document contains color and that color is necessary to decipher the meaning, context, or content of the Document, the Producing Party shall honor reasonable requests for either the production of the original Document for inspection and copying or production of a color image of the Document.

5. <u>Production Media</u>. A Producing Party shall produce Documents on a CD-ROM, DVD, external hard drive, or such other readily accessible computer or electronic media as the Producing Party and the Receiving Party may hereafter agree upon (the "Production Media"). Information that shall be identified on the face of the Production Media shall include: (1) the production date, and (2) the confidentiality notation required by the Protective Order entered in this case, if the media contains Confidential Information, as defined in the Protective Order. The face of the Production Media shall also contain the Bates Number range(s) of the Documents on the Production Media, and where not practicable to do so, may be provided in an accompanying letter.

If the Producing Party encrypts or "locks" the production, the Producing Party shall include with the production an explanation of how to decrypt the files.

6. <u>Document Unitization</u>. When scanning paper Documents into Document Images as described in paragraph 4(a), they shall be unitized in a manner so as to maintain the Documents and any attachments, as they existed in their original state. For electronic Documents, the relationship of Documents in a Document collection (e.g., cover letter and enclosures, e-mail and attachments, binder containing multiple Documents, or other Documents where a parent-child relationship exists between the Documents) shall be maintained through the scanning or conversion process from native format to TIFF, provided however, that the Parties shall only be required to present one level of parent child relationship. Document Images generated from attachments to e-mails stored in Native Format shall be produced contemporaneously and sequentially immediately after the parent e-mail. All hard copy Documents imaged and produced electronically shall include a unitization file ("load file") in accordance with paragraph 4(c).

7. <u>Paper Documents Containing Fixed Notes</u>. Paper Documents that contain fixed notes shall be scanned with the notes affixed, if it can be done so in a manner so as not to obstruct other content on the Document. If the content of the Document is obscured by the affixed notes, the Document and note shall be scanned separately.

8. <u>Duplicates</u>. A Producing Party who has more than one identical copy of an electronic Document (*i.e.,* the Documents are actual duplicates), the Producing Party need only produce a single copy of that Document. A Producing Party need not produce the same electronically stored information in more than one form. A Producing Party may de-duplicate its production across the entire production, or by custodian, at its sole discretion. Furthermore, the parties are not required

to produce multiple instances of an electronic message sent to multiple recipients, provided that all of the recipients (including "blind carbon copy" recipients) can be identified from Documents or their related metadata to be produced pursuant to this Protocol. Where a subsequent electronic mail message contains all of the portions of an earlier message produced pursuant to this Protocol, it is not necessary for a Producing Party to produce the earlier message in addition to the subsequent inclusive message. If the subsequent inclusive message does not include an attachment to an earlier message, the attachment must also be produced pursuant to this Protocol, in addition to the subsequent inclusive message.

9. <u>Bates Numbering</u>. Each Producing Party shall Bates number its productions as follows:

(a) <u>Document Images</u>. Each page of a produced Document shall have a legible, unique page identifier ("Bates Number") electronically "burned" onto the image at a location that does not unreasonably obliterate, conceal, or interfere with any information from the source Document. The Bates Number shall contain a two to four letter prefix associated with the Producing Party's name followed by 8 numbers (*e.g.,* ABCD00000001). The Producing Party will use a consistent prefix throughout the matter. Thus, once a party chooses a four letter prefix, *e.g.* ABCD, it shall not later produce a Document using a different prefix, *e.g.* EFGH. No other legend or stamp will be placed on the Document Image other than a confidentiality legend (where applicable), redactions, the Bates Number identified above, and any other internal tracking number that the Producing Party may choose to use. The confidentiality legend shall be "burned" onto each Document's image at a location that does not unreasonably obliterate or obscure any information from the source Document.

(b)     Native Format Documents.  In the event Native Format Documents are produced, in order to preserve the integrity of those Native Format Documents, no Bates Number, confidentiality legend, or internal tracking number should be added to the content of the Native Document.  Until such time as the Producing Party and the Receiving Party meet, confer, and address procedures for maintaining the confidentiality of Native Format Documents as required in Paragraph 4(e) above, all Native Format files shall remain designated as "Confidential" as set forth in the Protective Order.

10.     File Naming Conventions.

(a)     Document Images.  Each Document Image shall be named with the unique Bates Number for each page of the Document, as set forth in Paragraph 6 above.

(b)     Native Format Documents.  Native Format Documents shall be named by Bates Number and file extension that correspond to the original native format.

11.     Meta-Data.  The Producing Party shall produce the meta-data information described below with each production and in the format described in Paragraph 4 above.  For images generated from native electronic Documents, a Producing Party shall produce with each production the following fields, where available:

a.    Custodian;
b.    Document title;
c.    Email subject;
d.    Author;
e.    From (Sender/Author);
f.    Begin attachment(s);
g.    End attachment(s);
h.    Parent/Children Bates;

| | i. | Date; |
| --- | --- | --- |
| | j. | Date sent; |
| | k. | Date created (date the Document was created); |
| | l. | Recipients (all "to" ) for e-mail; |
| | m. | Copyees (all "cc"s) for e-mail; |
| | n. | Blind copyees (all "bcc"s) for e-mail; |
| | o. | Starting Bates (beginning Bates number); |
| | p. | Ending Bates (ending Bates number); |
| | q. | MD5 or SHA1 Hash for Native Format Documents; |
| | r. | Confidentiality designation, if applicable; |
| | s. | Original file path and name; and |
| | t. | Notation of Redaction presence, if applicable. |

12. <u>Search Parameters</u>.

(a) The Receiving Party and the Producing Party shall meet and confer on search terms to be used to identify electronic Documents collected that will be reviewed for possible production. During the course of the litigation, the Receiving Party and the Producing Party may modify the search terms by agreement. An initial list of search terms shall be agreed upon no later than 30 days following rulings on any objections or motions for protective order filed by a Producing Party relating to any request for production of Documents propounded by Receiving Party. By agreeing to an initial set of search terms, the parties to not waive any potential objections under Rule 26(b)(2)(B) or Rule 26(b)(2)(C).

(b) The Receiving Party and the Producing Party shall meet and confer on additional search parameters, including whether searches will be limited by custodian. With respect to Ferrellgas and Blue Rhino, e-mail and electronic Documents/files will be collected from the active e-mail system as well as any archive files stored on Ferrellgas and Blue Rhino servers, on the hard

9

drive of a custodian's personal computer, on the hard drive of a custodian's laptop, on any offline storage media created by or for a custodian (e.g., CD, DVD, thumbdrive), and in any network, intranet or file shares (public folders, databases, departmental drives and shared network folders) with potentially responsive information.

(c) No later than May 30, 2010, Ferrellgas will disclose to plaintiffs any storage location for e-mail or electronic files that it deems not reasonably accessible under Rule 26(b)(2)(B) due to undue burden or cost. At the same time, Ferrellgas will provide sufficient information for Plaintiffs to assess the alleged undue burden or cost and/or will produce a witness pursuant to Fed. R. Civ. P. 30(b)(6) on these issues. Ferrellgas will thereafter supplement its disclosures pursuant to this paragraph if and when it identifies any other storage locations for e-mail or electronic files that it deems not reasonably accessible.

13. Databases. To the extent discovery requires production of discoverable electronic information contained in a database, in lieu of producing the database, the Producing Party shall produce exemplar reports from the database in image format as described in Paragraph 4; provided that the Receiving Party identifies specific fields of information to the Producing Party. Upon review of the reports, the Receiving Party may make reasonable requests for additional information to explain the database scheme, codes, abbreviations, and different report formats or to request specific data from identified fields.

14. Privilege Logs. The Producing Parties will produce privilege logs in Excel format or a similar electronic format that allows text searching and organization of data. A Producing Party will produce a separate privilege log for each production within 30 days after the production of Documents for which a privilege is asserted. When there is a chain of privileged e-mails, the

Producing Party need only include one entry on the privilege log for the entire e-mail chain, and need not log each e-mail contained in the chain separately. The production of a privilege log for a custodian or his/her department shall be not less than 20 days prior to that custodian's deposition. The Producing Party and the Receiving Party may modify the deadlines for production of privilege logs by agreement.

15. <u>Discovery and Admissibility</u>. Nothing herein shall be construed to affect the discoverability or admissibility of any Document or data. All objections to the discoverability or admissibility of any Document or data are preserved and may be asserted at any time.

16. <u>Accessibility</u>. The parties shall provide at least 90 days advance written notice in the event they do not intend to retain any pertinent current or legacy system software or hardware, including application programs and utilities, that may be necessary to access, process, manipulate, print, etc., ESI previously identified as having potentially relevant information and not otherwise excluded by agreement of the parties or Court Order.

17. <u>Other Orders</u>. The terms of any Protective Order and Preservation Order entered in this action shall remain in full force and effect and nothing contained herein is to be construed as a modification of the terms of any such order.

**IT IS SO ORDERED.**

                                                  s/ Gary A. Fenner
                                                  Gary A. Fenner, Judge
                                                  United States District Court

DATED: April 14, 2010